Kilty, Chancellor.
Decreed, that Nicholas Hopkins be appointed trustee for the purpose of carrying into effect the will of Charles Rogers, deceased, in as full and ample manner as the defendants Merryman and Smith, and the plaintiff Hopkins were directed and empowered by the will of the deceased: provided, that Hopkins, before he acts as such, files with the *172 register a bond to the state with surety to be approved by the Chancellor in the penalty of $30,000, conditioned for the faithful performance of the trust reposed in him, &c. (b)
After the passing of this decree, Hopkins refused to take upon himself the trust; in consequence of which the plaintiffs, with the other devisees, by a petition signed by them, recommended Samuel Vincent to be appointed.
4th April, 1806.
Kilty, Chancellor.
Nicholas Hopkins, heretofore appointed trustee for the purpose of carrying into effect the will of Charles Rogers, having, in writing, refused to accept the said trust; it is, therefore, Decreed, on the recommendation of Sarah Rogers, Alexander and Ann Martin, Mary Lee, and James P. Boyd for Catherine Rogers, that Samuel Vincent be and he is hereby appointed trustee for the purposes aforesaid, with all and singular the powers vested in the former trustee by the original decree: provided, that before he shall act as trustee aforesaid, he shall file in this court, a bond with such penalty and security as was prescribed for the former trustee by the original decree.
This trustee gave bond accordingly; after which, Sarah Rogers, Alexander Martin, and Ann his wife, George Lee, and Mary, his wife, and Catherine Rogers, as devisees of the testator Charles Rogers, by their petition stated, that although the affairs of the estate were then unsettled; yet a division might be very advantageously made among them, subject to the payment of the debts of the deceased. Whereupon they prayed, that a-partition might be made, See.
22d November, 1806.
Kilty, Chancellor.
The Chancellor has considered this petition, and does not perceive how it can be complied with, consistently with the decree already passed, on which no report has been made by this trustee. The Chancellor refers the petitioners to the objections stated by him to the bill, soon after *173 the said decree, in order to obtain a partition; but will hear them at any time in support of the present petition.
The trustee Vincent, reported that there would be no necessity to sell any of the real estate of the deceased to pay his debts, as there was reason to believe, that they might be all satisfied from the personsl assets, in the hands of the administratrix, and with the rents and profits of the real estate, which would then soon be collected. And he also, some years after reported, that Sarah, who was the widow of the testator, was dead; and at the same time, returned accounts, in which he had, as he said, stated an account with her executor, and also with the deyisees.
18th May, 1810.
Kilty, Chancellor,
An account rendered by Samuel Vincent, trustee to the estate of Charles Rogers, has been laid before the Chancellor without any report, excepting what is stated in a short note, and in another seat with it, which are neither of them drawn in a formal manner, or calculated to explain the nature of the account. Ho vouchers are exhibited; but the account appears to be approved by the executors. The Auditor is directed to examine' and report on this account, and the statement made therewith, having reference to the proceedings-in court,under which Samuel Vincent Was appointed trustee,
In obedience to this order the Auditor reported, that he had stated an account between the trustee and the executors of Sarah Rogers ; from which there appeared to be due to them the sum of ¿672 9s. 0d; that he had stated another account between the trustee and the estate of the testator Charles Rogers, from which it appeared, that there was then in the trustee’s hands ¿61057 11s. 5d. arising from rents received by him, over and above the sum stated as due to the executors of Sarah Rogers; that it did not appear how this sum was to be distributed; or whether there were any debts due from the estate; and that the accounts had been stated by him without any proof or voucher, other than the trustee’s own-statements.
19th May, 1810.
Kilty, Chancellor.
On considering this report and the accounts therein referred to, the chancellor is of opinion,-that no order can, at present, be passed respecting the accounts exhibited by the trustee. But the subject will be again-considered on application of the parties interested, or any of them, or of the trustee for any' specific direction.
*174 After which, the trustee filed an account, on oath, with vouchers, on which the auditor reported two statements; one showing the balance in the trustee’s hands, due to the legal representatives of Charles Rogers, viz: $2,889 47; and the other showing the balance due to the representatives of Sarah Rogers, viz: $227 83 from the third part of the rents.
12¿/¿ September, 1810.
Kilty, Chancellor.
It is Ordered, that the said report and statements be confirmed; but before any application of the balance can be made, it is necessary for the court to be informed of the situation of the heirs, to whom their proportions ought to be paid, and their separate receipts, taken according to the will; although it is stated by the trustee, that, they conceive, they have nothing to do with the business. The trustee is directed to report to the chancellor the names, situation, and places of residence of the heirs; and any further knowledge which he may have obtained as to the debts, and the means of paying them; and the object, and present situation of the suit mentioned by him.
The trustee Vincent reported, in obedience to this order, that the testator Charles Rogers left, at the time of his death, the following children and devisees, namely, Sarah wife of Henry E. Bailey, Catharine wife of John Biffenderffer, who were then living; Ann wife of Alexander Martin, who died without issue about the 4th of May, 1807, after having by will given a legacy to her husband’s mother, and devised her estate to her husband’s daughter, who then resided in Massachusetts; and Mary the wife of George Lee, who by her will devised her estate to her husband, who was then living in Baltimore, died leaving no child. That Sarah the widow of the testator was then dead, after having by will bequeathed several legacies ; but what debts she owed, or what estate she left, except as before reported, this trustee could not say. That the debts of Charles Rogers had been all paid, that came to the trustee’s knowledge; except a small account in settling of which there had been some little difficulty, but of small consequence. That the devisees Bailey and wife, and Biffenderffer and wife instituted a suit in Baltimore county court claiming the whole estate, after the death of Ann Martin and Mary Lee as vested in them, under the will of Charles Rogers; and that suit was determined by said court in favor of Mrs. Bailey and Mrs. Biffenderffer by the opinion of the court, that the estate of said Rogers vested in them *175 under his will, upon the death of Mrs. Martin and Mrs. Lee. Such this trustee has understood to be the nature of the said action and the judgment of the court; from which an appeal was made, and the record now remains in the Court of Appeals for trial there. That the money of the estate, in this trustee’s hands, he is and has been ready to pay over as his Honor shall direct, as well the part audited to the widow, as that to the heirs; who are satisfied on that subject, waiting only for a decision in the Court of Appeals. That the balance due Sarah Rogers, at her death, this trustee has been ready and willing to pay to the executors, and -would have paid; but the heirs, although not disputing the account, conceived the money due on that account ought not to be paid until the determination of the Court of Appeals.
15th December, 1810.
Kilty, Chancellor.
Since the order of the 12th of September last a report has been made by the trustee of the matters directed therein; by which it appears, that the debts of Charles Rogers have been paid; except an account of small consequence; and the executors of Sarah Rogers have informed the court, that they wait for the sanction of the account rendered by the trustee. On this part of the case the trustee is authorized and directed to pay to the said executors of Sarah Rogers the sum reported due to her representatives, being $227 83. As to the balance of §2,889 47 due to the heirs, the trustee is authorized and directed to pay one-fourth part thereof to Sarah Bailey, and to take her separate receipt therefor, according to the will of Charles Rogers ; and one-fourth part to Catharine Diffenderffer, taking her separate receipt therefor. For the two other fourth parts a further order will be given on the determination of the appeal in the suit mentioned in the report.
Some years after which, the trustee Vincent, in a letter, dated on the 23d of November, 1814, addressed to the chancellor, says, c I inform you of my resignation of the trust in the estate of the late Charles Rogers, and have given it into the hands of Mr. John Diffenderffer one of the heirs at law.’ There does not appear to have been any order passed upon this resignation; but on an application, dated on the 20th of December following, made by John Diffenderffer, in which, among other things, he says, * on examining the account of Mr. Samuel Vincent, trustee of the late Charles Rogers’ estate, I find, that he has charged a considerable sum of money to Sarah Bailey, Jinn Martin, and Mary Lee ; it appears to me, by *176 the will of the late Charles Rogers, that they are not to receive, or entitled to any, till his debts were paid, which was completed on the 9th April, 1808.’
25th March, 1815.
Kilty, Chancellor.
On the application of John Diffenderffer, who married one of the heirs, and on the resignation of Samuel Vincent the trustee, the chancellor has examined the former proceedings. Before any further order ean be made it will be neeessary for him to be furnished with a transcript of the proceedings in the suit by Mrs. Bailey and Mrs. Diffenderffer which were carried to the Court of Appeals as mentioned in the report of Samuel Vincent.
This case having been again brought before the court, and some further explanations given as to the particulars mentioned in the last report of the trustee Vincent.
8th July, 1817.
Kilty, Chancellor.
It being represented, that there is an error in the report, as to the suits in the Court of Appeals mentioned in the order of March 25th, 1815, the' auditor may proceed to examine the reports and vouchers, without waiting for the transcript, and report thereon, giving notice to the'former and present trustee.
In obedience to this order the auditor, on the 23d of December, 1818, stated and reported several accounts as required, for performing which service, his legal fees amounted to $84. After which, the auditor, by his petition, stated, that the former trustee Vincent, and John Diffenderffer, who had been recognized by the court as trustee in the room of Vincent, although no order for his appointment appeared among the papers, had both of them neglected and refused to pay his fees, although Diffenderffer had always had in his hands funds of the estate to a large amount. Whereupon the auditor prayed, that Diffenderffer might be ordered to pay, &c.
18th October, 1819.
Kilty, Chancellor.
Ordered, that John Diffenderffer pay to the Auditor the sum of $84, on or before the 10th day of November next, or shew eause to the contrary; provided, that a copy of the petition and of this order be served on him before the 28th instant.
These are all the proceedings which appear to have been had in the case of Rogers v. Merryman, when Winder and wife instituted this suit against John Diffenderffer and others.
These plaintiffs, Winder and wife, by their bill, stated that Charles Sobers, after having made his will, as before set forth, died, *177 leaving a large estate, and four children his devisees, Sarah, Ann, Mary and Catherine; that the trustees appointed by the will of the testator, all refused to take upon themselves the trust, and were then dead; that no trustee to carry into effect the object of the will had ever been appointed by any competent authority; that Sarah married, and afterwards died, leaving the plaintiff Araminta, her only child and heir; that Ann and Mary had married, and afterwards died without issue; that Catherine married the defendant John, and was since dead, leaving these infant defendants her children, and heirs at law; that after the death of Ann and Mary, the defendant John Diffenderffer took the property so devised, into his possession, as the estate of the three infant defendants, his children, and had ever since received the rents and profits thereof. "Whereupon these plaintiffs by their bill prayed, that a division of the estate, so devised might be made among the legal representatives of the devisees of the testator, Charles Rogers, according to their respective interests; and also, that the defendant John Diffenderffer might account for the rents and profits; and that they might have such other relief as the nature of the case might require, &c.
The defendant John Diffenderffer, by his answer, admitted, that Charles Rogers had made his will and died, leaving a large estate, and four daughters as set forth in the bill; that Sarah had died leaving the plaintiff Araminta, her only child, who had married the other plaintiff William; that this defendant had married Catherine, who was then dead, leaving the three other defendants, her children and heirs, who were all then minors; that the trustees, appointed by the testator Charles Rogers, had refused to undertake the trust, in consequence of whieh, an application had been made to this court, and a trustee appointed, as set forth in the proceedings in the case of Rogers i>. Merryman ; that this defendant had, from time to time, received from the trustee Vincent, sums of money, on account of the distributive share due to his wife; and there remained a large balance due to her; whilst the •other parties received considerable sums more than was due to them; that Ann Martin died on the 5th of May, 1807; and Mary Lee on the 21st of January, 1808, both without issue; that, at the request of the trustee Vincent, this defendant had taken possession of the property on Calvert and Baltimore streets; and also of sundry ground rents in the city of Baltimore, which he had a right to do under the will, after the death of Ann and Mary, whereby the .estate survived to his children, the heirs of Catherine ; that he *178 had received from the estate, from the 16th of January, 1815, to the 28th of November, 1825, deducting the amount paid for taxes, repairs, &c. the sum of $24,149 35|, for all which he was ready to account; that he had not taken possession of any other part of the testator’s estate, or received any other rents and profits than those specified; and that the property devised to Sarah was more than her equal proportion of her father’s estate.
The three infant defendants put in their answers by guardian ad litem, in which they stated, that they had no knowledge of the matters set forth in the bill; and prayed, that their interests might be protected, See.
To these answers the plaintiffs put in a general replication; and commissions were issued to take testimony; under which the depositions of sundry witnesses were taken and returned on the 7th of September,-1827. After which the defendant John Diffenderffer with the consent of parties, was allowed to amend his answer; in which amended answer, he stated, that the devisee Ann, with her husband Alexander Martin, had executed a conveyance of the property devised to her, whereby she had docked the estate tail therein given to her; so that William Hitchborn became seized thereof in fee simple, in trust for her sole and separate use; after which she had, by her last will devised the property as therein specified and died.
1th April, 1828.
Bland, Chancellor.
This case standing ready for hearing, and the solicitors of the parties having been heard, the proceedings were read and considered.
After an attentive consideration of the will of the late Charles Rogers, upon the true construction of which this controversy turns, it is my opinion, that he devised the property, mentioned in the complainants’ bill, to his daughters for life, with remainder to their children in fee simple; and upon the death of any one daughter, without children, then her share was to go to the survivors and their children. There is nothing in this will which shews it to have been the intention of the testator, that his daughters, or their issue should take an estate tail only. All four of his daughters are now dead, and two of them, Ann and Mary, have left no issue; consequently, the undivided shares of the property, in the proceedings mentioned, which were devised to the late Ann and Mary, must pass, in two equal parts to the testator’s grand-children, the one-half part thereof to the plaintiff Araminta, as the daughter and sole heir of the late Sarah; and the other half part thereof to be equally divided among Amelia Diffenderffer, Michael Diffenderffer *179 and Charles Rogers Diffenderffer, as the children and heirs of the late Catherine. The bill prays for a partition of the estate; and for an account of the rents and profits. These prayers will be granted.
Decreed, that there be a partition of the lands, in the proceedings mentioned; and to the end, that this court may be enabled to make a just partition thereof; it is Ordered, that a commission issue to James Mosher, Benjamin C. Ridgate, Henry Didier, William F. Small, and Joseph Barling, authorizing them or any three of them to enter upon, walk oyer and survey the said land; and to divide the same, if it shall admit of division, according to the rights and interests of the respective parties ; that is to say, two-thirds of the whole of that which was devised to the said late Ann, Mary and Catherine, as in the proceedings mentioned, to be laid off as the portion of those who are to take on the death of the: and Mary, without issue; which two-thirds is to. two equal parts, one of which is to be allotted to me^Taintiff Araminta ; and the other half of the said two-thirds, t# said one-third of the whole, as the portion to whict the late Catherine are entitled, to be divided into ts one of which shall be allotted to the said Amelia Difi other third part thereof to the said Michael Diffenderfferj' remaining third part to the said Charles Rogers Diffenderffer; having regard to quantity and quality; and the said commissioners be directed in the commission to make out a plot and certificate of the said land, and of the divisions thereof, and an accurate description of the same, and of the several parts thereof, and of the value of each; and to the said commission there shall be annexed, as usual, an oath of office.
And it is further Decreed, that the said John Diffenderffer render a full and true account of the rents and profits of the property, in the proceedings mentioned, during the whole time the same has been, or may remain in his possession, or under his control. That the auditor state the account relative thereto from the evidence in the cause, and such other evidence as may be taken by either party before the commissioners Benjamin C. Ridgate and William Magruder of the city of Baltimore, on giving two days notice as usual; provided, that the same be taken and filed in this case on or before the fifth day of July next.
A commission was issued as directed by this decree; upon which the commissioners made a return, that they had made a par *180 tition of all the property in the proceedings mentioned as described; except the lot of ground at the corner of Baltimore and Calvert streets in the city of Baltimore, which would not, in their opinion, admit of division; and that the interests of the parties required, that it should he sold. Whereupon the parties, by an agreement in writing, consented that it should be sold as recommended.
26th July, 1828.
Bland, Chancellor.
Decreed, that the lot of ground at the corner of Baltimore and Calvert streets, as mentioned in the return of the commissioners, be sold; that John Glenn and George Winchester be appointed trustees to make the sale, &c. the terms of which shall be, one-fifth part of the purchase money to be paid in sixty days from the day of sale, the other four-fifths within six, ten, fourteen, and eighteen months from the day of sale, with interest on each instalment from the day of sale, to be secured by bonds with approved surety, &c.
Under the decree of the 7th of April, the parties took; and, on the 2d of September returned the depositions of sundry witnesses, and among them, that of the defendant John Diffenderffer, who consented to be examined as a witness on behalf of the plaintiffs. And the trustees, under the decree of the 26th of July reported, that they had made sale of the lot of ground, therein mentioned, to John Clarke for the sum of $27,200; which sale, after publication of the usual order unless cause shewn, was absolutely ratified on the 25th of November, 1828. And the distribution of the proceeds thereof, as stated by the auditor, was ratified on the 10th of December of the same year.
13th October, 1828.
Bland, Chancellor.
Decreed, that the return of the commissioners and the partition by them made be and the same is hereby ratified and confirmed.
And it is further Decreed, that William S. Winder and Ararninta Winder his wife, in right of the said Ararninta Winder, shall hold in severalty and not jointly with the other parties to this suit, one third of the real and leasehold estate within the lines of Gallow Barrow and Rogers’ Inspection-, of the estate of Charles- Rogers deceased, and which is particularly designated and described by commissioners in their said return as follows,. &c.: (So in like form as to the others).
And it is further Decreed, that each of the before mentioned parties, among whom the property and estate herein before mentioned, has been divided; and to whom it has been adjudged to be held, in severalty by this decree, pay his or her own costs, to be taxed *181 by the register, in due proportion to the amount of property to him or her adjudged and awarded.
The auditor reported on the 10th of November, 1828, that he had stated several accounts, some at the instance of the plaintiffs; and others according to the instructions of the defendant John Diffenderffer ; and had then stated an account marked D. agreeably to his own views of the justice of the case; in which he had allowed the trustee Diffenderffer a commission of ten per cent, as allowed to the former trustee; but he had charged interest on the balances in the trustee’s hands at the end of each year. As these balances consisted in part of interest, charged on former balances in hand, the trustee was thus charged with compound interest. But as this account might, in this particular, be questioned, he had stated another account, in which interest was not so charged. And that in continuation of each account he had distributed the balance, in the trustee’s hands, amongst the plaintiffs and the infant defendants; allowing the complainants one-third of the balances, and to each of those defendants one-third of the remaining two-thirds.
To these accounts the plaintiffs filed the following exceptions; They excepted to account A; because, interest is not properly charged therein; because, a credit is allowed for various sums for which no credit can, or ought to be claimed; because, a commission is therein allowed to John Diffenderffer ; because, a credit is allowed for rent, not received of Mrs. Sparks’ family, under a representation, that it was lost by default of the complainants’ solicitor, when, in truth, no such default ever existed, and no proof is made of it; and because, in other respects, the account is insufficient and defective and against the proof in the cause. They excepted to account B; because, interest is not properly charged therein; because, various credits are there given which ought not to be allowed said Diffenderffer; and because, the account is defective and unsupported by proof, They excepted to account D; because the trustee is allowed a commission of ten per cent.; because inte» rest is improperly charged, not a sufficient amount being allowed to the complainants; and because, the account is otherwise defective and against evidence. And they excepted to account E; because, the said John Diffenderffer is not therein charged with interest enough; and because, said account is otherwise insufficient, defective and against evidence.
*182 The defendant John Diffenderffer excepted to the report of the auditor, and the accounts C, D, and E, therewith returned; because he is, in the said accounts, charged with the payment of interest, with which he is not chargeable in law; because, in the said accounts, he is charged with compound interest, which is altogether illegal and unjust; because, in the said accounts, he is not allowed interest on the sums with which he is credited ; because, in the account C, he is not allowed a commission or compensation in any form; because, in the said accounts, he is not allowed the credits claimed, and stated in accounts A and B; because, all the said accounts, stated and reported by the auditor, except A, are erroneous, unjust, and illegal; and because, the auditor has assumed the statements of the former auditor as correct, whereas the same are erroneous in law and fact; particularly in regard to the sum of $2,578 77, charged as over payments to Mrs. Lee, Mrs. Martin, and Mrs. Bailey.
After which the defendant John Diffenderffer by his petition, accompanied by an affidavit of Paul G. Hands in relation to the matter of the petition, stated, that since the report of the auditor, he, the petitioner, had discovered material and important testimony, requiring additional accounts to be stated, in order to bring a full and perfect view of the defendant’s case before the chancellor. He therefore prayed, that the case might be again sent to the auditor with leave to take further testimony, &c.
21 st February, 1829.
Bland, Chancellor.—
Ordered, that this case be referred to the auditor with instructions to state such further accounts as may be required by the parties upon the testimony in the case, and such other proofs as may be produced before him, on giving the usual notice: And either party may take testimony before the commissioners appointed for Baltimore county, or any justice of the peace on giving three days notice as usual; provided, that such testimony be taken and filed in the chancery office before the seventh day of March next.
The auditor reported, that under this order he had taken the deposition of Paul G. Hands, and as his testimony related altogether to the account of the trustee Vincent, he had corrected that account accordingly; and that he had, by the instructions of the defendant John Diffenderffer, stated another account, marked F, which differed from account B, returned with his former report. To this account the plaintiffs excepted. And, on the application of the plaintiffs, *183 the time allowed for taking testimony under the order of the 21st of February was, by an order of the 13th of April, 1829, enlarged.
Under the authority of this order the plaintiffs caused the cashier and book-keeper of the Mechanics’ Bank of Baltimore to be summoned to appear before the commissioners to testify; and to produce a statement of the account in the said bank of John Biffenderffer from 1815 to 1829. And the plaintiffs propounded to them certain interrogatories, which were returned by the commissioners and filed here on the 20th of April, 1829, and are as follows: First. Do you know John Biffenderffer, of the city of Baltimore, who is one of the defendants in this case; and how long have you known him ? Second. Are you now, and how long have you been an officer in the Mechanics’ Bank of Baltimore; and what office in said bank do you hold ? Third. Do you know whether the said defendant John Biffenderffer keeps his bank account in the said bank; and for what period he has so kept his account ? Fourth. Do you know whether he has, during the time his said account was kept in said bank, kept an account with any other bank in this city or elsewhere? Fifth. Have you recently, and at what time, examined the said account of said John Biffenderffer with said Mechanics’ Bank ? If you have, what was the state of said account at the several periods from the year eighteen hundred and fifteen to the present time when the same was balanced ? State the exact account of the balances at each of said settlements, and the times at which said settlements were severally made ?
The cashier appeared, and objected to be examined on those interrogatories. And the defendant John Biffenderffer also appeared, and objected to the examination of the cashier of the Mechanics’ Bank, upon the interrogatories filed by the complainant. First, because he is not a competent witness in this cause; second, because he has no legal right to exhibit the account of the said defendant with the bank, during the period referred to in the interrogatory; and third, because he objects to their putting the interrogatory to the cashier, or any other officer of the bank; or to the production of the books of the bank, or any copy thereof, until an order from the court has been obtained for that purpose. And the defendant John Biffenderffer, by his petition, filed with the return of the commissioners, prayed to be heard upon the matter.
4th May, 1829.
Bland, Chancellor.—
The matter of the petition of the defendant John Biffenderffer, standing ready for hearing *184 and the solicitors of the parties having been fully heard, the pro-’ ceedings were read and considered.
The execution of so much of the decree of the 7th of April, 1828, as directs the defendant John Diffenderffer, to render a full account of the rents and profits, is all that remains of this case5 and, consequently, no testimony ought now to be taken which is hot, in some way, pertinent to that matter.
In the argument, it was mainly urged, on the part of this defen*» dant, that these interrogatories went to discredit the testimony he had consented to give, at the instance of the plaintiffs, in September last; and that having been made a witness by the plaintiffs on their own behalf; they could not now discredit their own witness. And, in the next place, that the testimony called for by the interrogatories, was improper and irrelevant.
I have never before been called on to decide upon any such Objections; nor have I met with any case where similar objections have been made by a party, to the further progress of the examination of witnesses, either in the English books, or among the records of this court. Yet, from the manner in which this case has been treated, the right to have the responses to the interrogatories withheld, until such objections, made by a party to the suit, could be decided on by the court, seems to have been conceded on all hands. Nothing was said about the right of a party to make such objections ; or as to their effect when made; or as to the time and manner in which they were to be brought before the court and determined. And yet these are matters, which certainly ought not to be overlooked in a case of the very first impression. The determination called for, it is evident, must be of great importance, as regards the course, and practice of this court. Looking to those consequences, I deemed it proper to hold the matter under advisement until I could bestow upon it a careful consideration.
The mode of bringing testimony into a Court of Chancery, differs from that by which it is brought into a court of common law; and the manner of collecting proofs in the Maryland Court of Chancery is, in many respects, diiferent from that pursued by the English court. But the object in all is, or should be, to arrive at the truth, with the least possible expense and delay; and, consequently, all the established forms of judicial proceeding, in relation to this subject, should be made to bend in subservience to this great object. When an issue, as to any matter of fact, has been made up in chancery, a commission may be obtained to collect proofs in *185 relation to it. The mode of obtaining such a commission, and of selecting the commissioners, to whom it is to be directed, are, in some particulars, different, in England, from those which, by usage, the rules of the court, and legislative enactments, have been prescribed for attaining the same objects here. All which may, however, be passed over as unimportant as regards the matter now under consideration.
In England, the interrogatories, intended to be propounded to the witnesses, must accompany the commission, or be handed to the commissioners before they actually begin to execute it. (c) And according to the ancient orders, and the long established practice, they must be so drawn as to call forth only those facts which may be used as evidence in the cause. To prevent the introduction of impertinence and scandal, it is directed, that they shall be drawn or sanctioned by counsel; that they shall be penned with care, so that they be pertinent, and only to the points necessary; and that the witnesses be sorted and examined on those interrogatories only to which their testimony extends, without the needless interrogatories of matters unnecessary or immaterial; as well to avoid the expense of superfluous examinations, as that apt interrogatories, which are the very life of the case, may be exhibited, (d) The party, who applies for and obtains a commission, has the carriage of it; and it is his duty to give notice to the commissioners and to the opposite party, of the time and place, when and where it is to be executed. (e) At which time and place, the witnesses also are summoned to convene; and if they neglect or refuse to do so, on the fact being represented to the court, they may be compelled to attend.
When the commissioners have met, and they and their clerk, have taken the prescribed oath, which requires them to keep the testimony taken by them secret, until it shall be legally published, and they are prepared to proceed, they then exclude every one else from the apartment in which they sit, and call in only one witness at a time, to whom they propound the interrogatories in succession. And, after examining the witness on each interrogatory, they carefully take down in writing what he declares in relation thereto. (f) *186 In doing this, it is their duty to confine themselves and the witness to the substance of the interrogatories; for, if they take down any thing impertinent, it may be suppressed, and the commissioners themselves made to pay the costs. Each witness having been fully examined, and the depositions revised, corrected, and properly certified, the whole must be sealed up, so that no part of the contents can be read, and thus returned to the court, (g) When the commissions have been all returned, an order may be obtained for their publication, or in other words, that they be opened, read, and copies taken by all concerned, if required. The examinations being thus brought to a conclusion and made public, no further testimony can be taken in relation to the matter in issue between the parties ; unless under very special circumstances, (h)
After the publication, but not before, either party may exhibit articles against any witness of his opponent; and obtain a commission to take testimony in support of his articles impeaching the credibility, or the competency of the witness, (i) And if any of the interrogatories, or any portion of the testimony be scandalous, or impertinent, and irrelevant to the matter in issue, they may he suppressed at the hearing; or if not, still they must be totally disregarded ; since it would be deemed error in the court to ground its decree, upon any such testimony; and the party, at whose instance such impertinent testimony has been taken may be made to pay the costs.
From this mode in which the English Court of Chancery has the testimony of a witness taken, it is manifest, that it would be utterly impracticable, before publication, to suspend the examination until objections to the competency of the witness, or the relevancy of the testimony was determined; because a’ party cannot, from the general notice given him by his opponent, that such and such persons will be called as witnesses, be prepared to shew the incompetency, or to discredit any one of them without hearing, or knowing the nature of his testimony. Although the incompetency *187 of a witness arising from infamy, or the like, may be known; yet his interest, or any incompetency deducible from his own disclosures cannot be known; and therefore it is, that articles of impeachment are allowed to be filed after publication, as all such matters are until then sealed up in secret, (j) And besides, even if such a course were allowed to a party, the delays he might interpose, by such objections, might be multiplied without end; and, by a sinister ingenuity, a cause might be interminably procrastinated. Hence there is no trace to be found in the English books of any such objections ever having been attempted to be made.
It is a fundamental principle of our law, in criminal matters, that the accused shall have a public trial; and it is manifestly beneficial to all, that the administration of justice, as well civil as criminal, should be open and public in every stage, and in all its branches. It is one of the greatest safeguards of the rights of the citizen, that all judicial officers should be subjected to the salutary influence of public opinion; while on the other hand publicity is the best and the strongest protection, that an upright faithful officer can have or desire, (k) This publicity of judicial proceeding which existed in all parts of Europe governed by the Roman law; (l) and under those governments which arose immediately out of the fall of the Roman empire, was first abolished, by the papal decretals, towards the close of thirteenth century. The Pope believed, that the secrecy of judicial proceedings would furnish him with a more certain means of extirpating heretics; and the civil tribunals adopted, in succession, an innovation which relieved them from public censure, by concealing the errors they were liable to commit; while the veil of mystery, which enveloped their proceedings, was calculated, in the eyes of the vulgar, to invest them with an air of greater importance, (m) The English Chancellors, *188 prior to the commencement of the seventeenth century, were almost always appointed from among the dignitaries of the then established catholic church of England; and those ecclesiastical Chancellors gave to the Chancery Court, as a court of equity, its general outline and substantially fashioned its modes of proceeding. (n)
Hence it is fair to conclude, that this mode of collecting testimony, under a solemn injunction of secrecy, was an ecclesiastical contrivance; and that it may be regarded as one of the papal perversions of the mode of administering justice, (o) A slight review of the English authorities upon this subject will be sufficient to show, that this rigid obligation of secrecy in taking testimony is always inconvenient, and often attended with great expense and delay, besides being sometimes made the instrument of the most grievous fraud, (p)
The mode of collecting testimony in the Court of Chancery of Maryland has been altered and materially improved. The whole proceedings under a commission to take testimony have been thrown open; all secrecy has been abolished; and each party is required to he notified, and has a right to be present, and to have his interrogatories publicly propounded to the witnesses, (q) *189 And in fact the mode now of examining a witness, under a commission from this court, except that it is all in writing, is similar in every respect to an examination in a court of common law. He on whose part the witness is called examines him first, and then he is cross-examined by the opposite party; and so on until the whole testimony is taken. The benefit of which cross-examination, strictly and properly so called, and as here understood, cannot be had, under the English secret mode of proceeding. (r) If any thing should be developed, in the course of the examination, from which it appears, that, by other testimony, the incompetency or incredibility of a witness may be shewn, it is not necessary, as in England, to wait for the return of the commission, and for the having of it opened by an order of the court, and then to exhibit articles against the witness; and to take out another commission to bring in proof in support of such articles; (s) but the party may require the commissioners to adjourn their session to another day, and so from time to time, not extending to unreasonable delay, until all the testimony within their reach can be taken; (t) or another commission, for any such purpose, may be at once obtained to any other place, where the requisite testimony may be had. (u)
*190 But although, as in England, the commissioners are, in some respects, to be regarded as the court itself; (w) yet there is nothing in our practice, or acts of assembly, which has clothed them with any thing more than mere ministerial powers, for the purpose of taking the examination under the commission. It is their duty to propound the interrogatories as written and handed to them by the respective parties, or their solicitors; and to take down all that the witness declares in answer thereto, rejecting every thing irrelevant to the interrogatory; but nothing more! They have no authority whatever to decide finally upon the competency or credibility of any witness presented to them for examination; nor can they undertake absolutely to determine upon the relevancy of any interrogatory, or the pertinency of any testimony to the points in issué between the parties; because, although the commissioners are not bound to divest themselves entirely of all discretion, as to what is, or is not legal evidence; it is yet finally and exclusively the province of the court to pass judgment upon all such matters. (x)
It is evidently as a consequence of the rule which requires the testimony of the witnesses to be taken'in secret, that the English practice has rendered it necessary to have all the interrogatories delivered to the commissioners before the examination is begun; and hence, it is almost impossible to avoid, that senseless and unnecessary verbosity, tautology, and scandal, the introduction of which the ancient orders, regulating the English practice, so earnestly and repeatedly endeavour to prevent, (y) By our public mode of proceeding, we have been, relieved from all such embarrassments. It is wholly unnecessary, in any case, to file a long formal set of interrogatories to be sent with the commission; unless it should be sent to a distance, or into a foreign country, where the party, or his solicitor cannot attend. But where the party, or his solicitor, who understands the nature of the matters in issue, to which the proofs are to be directed, can be present at the examination of the witnesses, as he always ought to be, the better and more correct mode, instead of sorting the witnesses to whom the respective interrogatories apply, as directed by the English practice, (z) *191 is to propound to each one of them exactly such interrogatories only, as are most likely to draw forth ‘ the testimony he is capable of giving; and then to place each answer immediately under the interrogatory to which it is a response. In this way all unnecessary repetitions would be avoided; and the proofs would be placed in an orderly form, best calculated to prevent confusion, and to facilitate the perusal and consideration of them, (a)
It would seem to be by no means impracticable, under our public mode of examination, to allow a party to the suit to make objections to the competency of witnesses, or to the relevancy of their testimony; and to have the examination suspended until the court should decide upon their validity. In a court of common law this course of proceeding is attended with little delay and no inconvenience ; because the parties and witnesses being before the judge who is to decide; the point may be instantly discussed, judgment immediately pronounced, and the examination proceed or otherwise, at once. But according to the mode of taking testimony in chancery, similar despatch could not possibly he had. The examination must stop, the commissioners, parties and witnesses, who had been assembled, at much trouble and expense, must disperse; the commission, with all the proceedings under it, shewing the objection, must be returned to the court; and then the parties must have a day to be heard; without which it would be unfair to pronounce judgment upon any such objection. Now it is perfectly manifest, that such a course would be open to the greatest abuse. The parties might multiply, and in various forms reiterate objections.of this kind, so as not only to delay; but actually to render it almost impossible to bring the examination of the witnesses to a conclusion; and the expenses might be reduplicated and increased to an enormous amount. (b) But, besides, I am not satisfied, even if such a course were allowed, that it would be, in all cases, practicable, understandingly, and correctly to decide upon such objections, proceeding from a party, because some other testimony, upon which the validity of such an objection might mainly depend, might not then have been taken and brought before the court.
For these reasons, therefore, as in England, where an order has been passed, which is granted as of course, for the examination of a co-defendant as a witness, his examination cannot be suspended *192 by an objection to his competency, which must be raised at the hearing, when his deposition is offered to be read in evidence; (c) so here, I shall for the future regard it as a settled principle, governing the practice of this court, that no objection, coming from a party to the suit, to the competency of a witness, or to the relevancy of any interrogatory, or of any testimony shall be allowed to suspend or impede the taking of the proofs. Such objections may, howevér, be noted by the commissioners in their-proceedings, as has been the practice heretofore; (d) and whether so noted or not, they may be made, heard, and determined upon, at the final hearing. (e)
But if it appears, that such an objection has been made, at any time, previous to the hearing, either before the commissioners, the auditor, or a justice of the peace, authorized by a special order to take testimony, it must be considered as sufficient notice to put the opposite party upon his guard to meet and repel it, either by a release at the time, so as then, as in cases at common law, immediately to remove the influence of interest from the mind of the witness; or to overcome the objection if he can by other proof. But if no such release be then given, nor other proof be then taken; and it should appear, at the hearing, that the witness was interested the objection must be sustained, and he cannot be then released and re-examined; nor can the hearing of the case be postponed for the purpose of taking any other proof, of which the party had been thus apprised, might be called for; and which it had been in his power to have taken and brought in; as it must be presumed, that he had waived the benefit of that of which he had failed to avail himself, and of which he had had full knowledge, (f) It is, in general, *193 true that a party cannot discredit his own witness; (g) and, therefore, if it should appear, at the hearing, as has .been objected by this defendant John Diffenderffer, that the plaintiffs have, in truth, taken testimony to discredit any one of their own witnesses, such testimony must be rejected. But as the examination cannot be suspended for the purpose of determining the bearing of any testimony, in this respect, or of ascertaining the competency of a witness, the cross-examination, by the party who then makes the objection, cannot be deemed, at the hearing, a waiver of it; because a party cannot be presumed to have waived any ground of claim, or defence, which it was not in his power to have insisted upon, with effect, at an earlier stage of the case, (h) No injury or disadvantage to any suitor can arise from this course of proceeding, since the court cannot, in any respect, found its decree upon incompetent or irrelevant testimony; and if it should do so, it would be deemed error, and the decree might, on appeal, be for that cause reversed, (i)
I shall, upon the received principles of the English practice, hold the party or his solicitor strictly responsible for the. propriety and pertinency of the interrogatories propounded by him to the witnesses. And although commissioners should not confine themselves strictly to the letter of the interrogatories; but ought so to take down every thing, that the whole truth may plainly appear; yet, they should not insert any matter from a witness, not properly and substantially pertinent to the interrogatory propounded, (j) Any scandalous, impertinent or irrelevant matter returned under a commission may be suppressed and taken off the file; and the party solicitor, or commissioner on being convicted of the irregularity may be made to pay the costs or otherwise punished; since it is indispensably necessary, that the court should be enabled to vindicate the regularity and purity of its proceedings, and prevent its records from being made the depository of any foul or scandalous matter foreign from the point in controversy. (k)
*194 I have so far only considered and disposed of the objections proceeding from the party to the suit; but, in this case, the witness himself has refused to answer. According to our law, no man can be compelled to criminate himself; and no attorney can be allowed to divulge the secrets of his client. In these and some other similar instances the law affords to the witness, or his client a protection of which he must not be deprived; and hence he cannot be compelled to give any answer before the commissioners Which would go to admit his criminality, or to divulge the secrets of his client. (l) When the witness himself makes an objection of this kind, it becomes indispensably necessary to suspend the examination until it is determined upon; because, there is no other possible mode of sustaining his protection, should he be entitled to it. But then the situation of the witness must be so described as to shew how he, or his client is entitled to the protection claimed, to enable this court, in like manner as a court of common law, to judge of its validity. In this, as in the English court of chancery, the only way in which a witness can protect himself, is to state his objection before the commissioners, who return the commission with, what is called, the witnesses’ demurrer; and the question is brought before the court by setting it down for argument. Certainly it is not, strictly speaking, a demurrer, which is an instrument, that admits facts stated for the purpose of taking the opinion of the court; but by an abuse of the term, the witness’ objection to answer is called a demurrer in the popular sense. And there must be a way by which the court can judicially determine its validity. If the demurrer of the witness be overruled he may be made to pay the costs, (m)
This witness has assigned no reason for his refusal to answer; and his situation is no otherwise described than by his being designated as the cashier of the Mechanics’ Bank. It is neither expressly declared, nor to be inferred from any thing which does appear, that the witness has rested his refusal to answer upon any one of the established legal protections. It is clear, that he cannot demur, because the questions- asked him are *195 not pertinent to the matter in issue, (n) It surely cannot be pretended, that an individual, because it happens to be convenient to withhold a statement of his dealings with a party to the suit, pertinent to the matter in issue, from being used as evidence in that suit, should, therefore, be permitted to do so at his pleasure. A bank, as a body politic, is endowed with many attributes of personality ; and acts as an individual in its dealings with all persons; consequently it can have no pretension to any greater right, arising from its mere character as a body politic, than any individual whatever to withhold any legal evidence, that may be in its possession. It is the duty of an executor or trustee to keep distinct accounts of the property which he himself is bound to administer. But if he blends them in accounts with others, and puts the accounts of his testator or the cestue qui trust into his banking or any other books, with the knowledge and approbation of those who may have a separate interest in such books, the cestue qui trust will have a right to see every part of such original books which contain any thing in relation to the transaction in which he has an interest, (o)
The act of Assembly upon this subject relates to the documentary evidence in possession of a party to a suit; (p) and as regards this court, has been truly considered as merely an affirmance of its powers, (q) But where certain specified books and papers are in the hands of third persons, and the evidence they contain, materially bearing on the matter in issue, is distinctly designated, as in this instance, it is clear that a court of equity, as well as a court of common law, may resort to competent means to compel the production of such specified written testimony, as well as verbal proof; since the power to do so is essential to its constitution as a court, without which it could not possibly proceed with due effect, (r) I shall, therefore, overrule the objection of this witness; and order him to testify as required by the interrogatories.
In this case, the examination has not been attempted to be taken *196 under a regular commission. But the mode of proceeding authorized by the order of the 21st of February, 1829, under which it was proposed to act, amounts substantially to a commission. That order authorized an examination before the commissioners appointed for Baltimore county; or any justice of the peace. The commissioners having been regularly appointed according to the act of assembly; (s) must, therefore, for this purpose, be considered as much the ministerial officers of the court, as if they h*ad been nominated as commissioners in a commission specially directed to them in the ancient form.
In regard to the authority given by the order of the, 21st of February, 1829, to take the depositions of witnesses before a justice of the peace, I am aware that there has been some doubt and difference of opinion as to the mode of requiring a witness to attend and testify in such cases; but nevertheless a witness has been compelled to attend before a justice of the peace and to have his depoposition taken in a case depending in this court, under an order giving the justice authority thus to act as a commissioner, (t) Of late years there have been a great multitude of instances of such orders; and the convenience and economy of taking testimony in that mode has been felt to a great extent. It has, in my time, given rise to no complaint; and it has been sanctioned and approved by a wide range of experience, (u) I therefore feel myself authorized to place it upon a footing, in all respects, with the mode of taking testimony under a regular commission. And, consequently, whether the order, under which this testimony is proposed to be taken, be considered as amounting to, or in fact as a commission directed to the officers of the court; or as analogous to an examination before the auditor, under a decree or order to account; or as being nothing more than an order authorizing a justice of the peace to take testimony, I shall sanction, aid, and protect the proceedings under them, in like manner as if the authority had been conferred by a regular commission. (w) A late act of assembly affirms the power of this court to enforce the attendance of witnesses before commissioners, or the auditor; and gives a new and additional mode of compelling the witness to attend, (x) which, in *197 some respects, is not so clear, or so energetic as the ancient course of proceeding.
Whereupon it is Ordered, that the time allowed for taking testimony under the order of the 21st of February last, be and the same is hereby enlarged; provided, that the testimony so taken be returned and filed in the chancery office, on or before the 19th instant. And it is further Ordered, that the said objection of the said witness; and also those of the defendant John Diffenderffer, be and the same are hereby overruled; and the said witnesses are hereby required to answer forthwith and fully to the said interrogatories propounded to them, or either of them.
Under this order the witnesses were again called before the commissioners, and answered the interrogatories. And extracts from the books of the Mechanics’ Bank, of the account of the defendant John Diffenderffer, were produced as required; all which were returned by the commissioners on the 10th of June, 1829.
1th October, 1829.
Bland, Chancellor.
This case standing ready for hearing, on the exceptions to the auditor’s report, and for final hearing on the decree to account, the solicitors of the parties were fully heard, and the proceedings read and considered.
I take it to have been finally settled by the judgment of the court, in the case of Rogers v. Merryman, to which the widow and the four daughters of the late Charles Rogers, were all parties; first, that the debts of the testator had been all properly and correctly paid by the trustee Vincent, and that a share of the surplus left, after their payment, having been ordered to be paid to Catherine Diffenderffer, who had been a party to that suit, before her marriage, is conclusive upon her, and those claiming under her; because, so long as those orders of the 12th of September, and 15th of December, 1820, remain in full force, and they are not now revisable, she, or any one claiming under her, cannot be permitted, in any way, to question the correctness of the manner in which the debts of Charles Rogers, deceased, were paid, which had been so distinctly noticed, considered, and confirmed by those judgments of the court. And in the next place, that it has been finally determined by the judgment of this court, as indicated by the orders of the 25th of March, 1815; the 8th of July, 1816, and the 18th of October, 1819, that this defendant, John Diffenderffer, *198 was to be considered thenceforward, as a trustee charged with the execution of the will of Charles Rogers, deceased; and that he had succeeded to that trust, under the authority of this court, immediately after the resignation of the late Samuel Vincent, on the 23d of November, 1814.
These positions, which have been established in that case, appear to me to furnish a very satisfactory answer to the claim of the representatives of Catharine Diffenderffer deceased, to be substituted for and allowed to take the place of the creditors of Charles Rogers deceased, on the ground of their having been improperly paid with their funds; and upon that ground to have certain sums withheld for their use from the distribution now about to be made; and also to the objection, that John Diffenderffer is here claiming only as the natural guardian of his own children and in opposition to the plaintiffs; since those proceedings shew, that he stands here as a trustee, so constituted by the authority of this court, for the benefit of all the devisees under the will of Charles Rogers deceased.
But, passing over all the proceedings and final adjudications in the case of Rogers v. Merryman, let us return to the decree, in this case of the 7th April, 1828, by which the defendant John Diffenderffer has been called upon to account for the rents and profits for the whole time the property has been, or may remain in his possession. The statements reported by the auditor, and the exceptions of the parties present two distinct subjects for consideration; first, the claims and pretensions of the representatives of the late Catharine ; and second, the liabilities of and allowances to this defendant John Diffenderffer.
It has been urged, that the debts of the late Charles Rogers were paid, contrary to the directions of his will, by the trustee Vincent, out of rents and profits which ought to have gone to the late Catharine; and, consequently, that she or her representatives, to the extent of the rents and profits to which she was entitled, and which had been so misapplied, ought now to be allowed to take the place of those creditors as against these funds in the hands of this trustee, and which are now about to be distributed.
This stand is taken upon the ground of substitution ; and it can only be maintained by means of those principles by which a surety, or one who has been placed in the condition of a surety is allowed to take the place of the creditor against the principal debtor; or by the help of those principles by which securities or assets are mar *199 shalled so as to satisfy all, or to leave the loss to fall where it must rest according to the positive rules of law; or by the aid of the general principles of equity arising out of some fraud or injustice practised, or participated in by the plaintiffs, or those under whom they claim.
It is a well settled general rule, that no one can be allowed to intrude himself upon another as his surety; and therefore if a man voluntarily pays the debt of another, without any agreement to that effect with the debtor, he cannot take the place of the creditor, or in any way recover the money so paid of the debtor; because the law does not permit one man thus, officiously, and without solicitation, to intermeddle with the affairs of another. (y) The only exception to this general rule is, where, on a bill of exchange being dishonored, a third person, not a party to it, may pay it for the honor of the drawer, or any of the endorsers. The reason of allowing this exception is, that it induces the friends of the drawer or endorsers to render them this service; and by that means preserves the honor of commerce, and the credit of the trader. (z) But where one, by express contract, becomes bound as a surety for the payment of the debt of another, or as an insurer against loss, then if the surety or insurer pays the whole debt, or reimburses the loser he thereby intitles himself to demand a full assignment or subrogation of all the securities of the creditor or insured; and has a right, in all respects, to be substituted for the creditor or insured, so as to enable him to obtain re-imbursement from his principal, (a)
This general right of a surety has, to a certain extent, been affirmed by an act of assembly, (b) and this court has so entirely approved of the doctrine as to allow a surety, who had paid the whole purchase money, to have the benefit of the equitable lien of the vendor; (c) and also to allow a surety in a custom-house bond, *200 who had paid the whole debt, to take the place of the government; and thus secure to himself the high, and overruling preference to *201 which such a creditor is entitled, (d) These principles, in regard to those who stand properly in the relation to each other of principal debtor and surety, have been extended, for the benefit of an executor or administrator, who may have been induced through mistake, to pay debts of the deceased beyond the amount of the assets which came to his hands; in which case he has always been allowed, in this court, as in England, to take the place of the creditors, and obtain reimbursement out of the real assets of the deceased, so far as they were liable; or if the debt so overpaid was on a judgment against the deceased, operating as a subsisting lien upon his realty, the executor or administrator is permitted to take the place of such judgment creditor, and to have a preference in the distribution of the real assets over creditors of an inferior grade. (e)
The doctrine of substitution embraces only those cases where there is a principal debtor and a surety by express or implied contract; or where, for the benefit of commerce, a man is allowed officiously to place himself in the condition of a surety; or where he has by mistake, as in the case of an executor, made payment as if he had stood in that situation. Now before any of the principles, upon this subject, can be brought to bear upon the case under consideration, it must appear, that the plaintiff Jlraminta, or those under whom she claims were the principal debtors; or that the trustee Vincent was the principal; and that Catharine, or those claiming under her, were their sureties; and that those claiming under Catharine are now here asking to be reimbursed, as such, out of the funds of their principal now in the hands of the court.
But the assumption of any such statement would be in direct opposition to all the proofs in the case. Vincent was a trustee appointed by this court for the benefit of all concerned in the estate of the late Charles Rogers; and if he misapplied the rents and pro *202 fits which came to his hands, he alone is responsible. If this court were to make good to Catharine’s representatives any amount of the rents and profits which had been misapplied by Vincent to their prejudice, out of the proportion of the funds now about to be distributed, to which the plaintiff Araminta is entitled, it would be, in effect, to treat her as the principal debtor, for whose benefit, among' others, Vincent was not merely a trustee, subject only to the order of this court; but,,who was, in fact, her own proper agent; or it would be to consider Araminta as the surety of the trustee Vincent. But there is nothing in the case to warrant the placing of Araminta in any such condition of responsibility; and therefore the representatives of the late Catharine cannot sustain themselves on the stand they have taken by any principles derivable from the case of a principal debtor and surety. ’
But the representatives of the late Catherine, insist on having the securities, or these assets, now; about to be distributed, so marshalled as to reimburse them to the amount of their share of the rents and profits which had been misapplied by. the former trustee, Vincent.
The marshalling of securities is only made where the debt is so secured as to give to the creditor the means of obtaining payment out of two funds, and others can reach only one of them. In such case the court will compel the creditor who holds the more comprehensive security to obtain payment, as far as practicable, out of the fund which the other creditors cannot ■ reach; so as to leave the other fund to be distributed among the creditors holding more limited securities. (f) But there is no sort of analogy between the case of creditors, whose securities may be thus marshalled, for the benefit of all, and without injury to any, and the case now under consideration. The plaintiff Araminta, and the representatives of the late Catherine, stand precisely in the same situation; not as creditors'seeking payment, by way of preference, or otherwise, from the assets of a debtor; but claiming the distribution of a fund to which they are alike entitled.
Marshalling of assets respects two different funds, and two different sets of parties, where one set can resort to either fund, and the other only to one. As where there are real and personal assets, and judgment and simple contract creditors; the real assets will be applied to the satisfaction of the judgment creditors; so as to leave *203 the personalty to satisfy the debts due by simple contract, (g) But here there is but one fund and one set of claimants, who all deduce their titles from the same fountain. There is, then, nothing to be drawn from the principles of equity in relation to the marshalling of securities or of assets which can, in any manner, aid the representatives of the late Catherine, in maintaining the stand they have taken.
It has, however, been argued, that the amount misapplied by the trustee Vincent, came to the use of those under whom Araminta claims; And, therefore, that it ought to be deducted from the share now about to be awarded to her.
If it had been shewn, that the trustee Vincent had fraudulently misapplied the funds, and that Araminta, or those under whom she claims, had participated in the fraud; or that Vincent had paid money, properly belonging to the late Catherine, or her representatives, to Araminta, or those under whom she claims, who had received it, knowing it to be such, then there would have been a strong equitable ground for deducting the amount so received, for the benefit of the representatives of the late Catherine, from the amount now about to be awarded to Araminta. But there is no proof whatever of any fraud in Vincent, or of any participation in it by Araminta, or those under whom she claims; or of their having received any sums of money, knowing it to be the money of the late Catherine; or that it was money to which they were not justly entitled.
Upon the whole, therefore, I am of opinion, that no deduction whatever can be made from the share to which the plaintiff Araminta is entitled; because, of any misapplication of the rents and profits in payment of the debts of the late Charles Rogers, or on account of any other misapplication of them by the former trustee Samuel Vincent.
Having thus disposed of the claims of the representatives of Catherine Biffenderffer, deceased, it only remains to determine the extent of the liabilities and allowances of the defendant John Biffenderffer.
It has been urged, on his behalf, that he cannot be considered as a trustee; because he took possession of this property in no other character, than as the natural guardian of his children. Admitting that he did so. He himself states, that he held their *204 right under the will of their grandfather; and so far, according to his own shewing, he took possession of this property in the character of a trustee; and as such he undertook^ at his peril, with the title deeds of his children before him, to claim and hold, on their behalf, a much larger interest than that which belonged to them. He had thus confessedly assumed no higher character than that of trustee for those who had the right; and now, that it clearly appéars, and has been determined by a decree of this court, that the whole right was not in his children, he certainly cannot be allowed to assume a new character, and to retain rents and profits which he does not pretend to have received as his own ; but for the use of others, who, it has been determined, have no right to them, and who cannot be allowed to receive them, or be held accountable for them. The decree of the 7th of April, 1828, is, however, conclüsive upon this subject. Under that decree he has been called upon to account for the benefit of those, the extent of whose interests have been determined by it.
It has been contended on behalf of John Diffenderffer, that he is not chargeable with interest at all'; while on the other hand, compound interest is claimed of him.
Legal interest is the measure of damages which the law allows in all cases for the detention of money; which the holder is made to pay where he is in any default in not paying, or applying the money in his hands as he was bound to do. (h) The general rule is, however, that interest is not given upon interest; and therefore, on a bill for an account, for the recovery of a legacy, or the like, where interest is allowed, it is computed by the auditor from the time the money became due up to the time of stating the account, with interest on the principal sum only from that time until paid. By which mode of computation and decree compound interest is excluded; and this appears to be the rule in Virginia. (i) It has long been the established course of this court, according to the rule laid down by the Court of Appeals, in taking an account of rents and profits to charge the party with interest thereon from the respective times they were received, (j)
In this case, one of the accounts of the rents and profits has been stated with annual rests, at the instances of the plaintiffs: and the statement has not been objected to. It is more favourable *205 to the defendant John Diffenderffer than to charge him with interest, according to the rule of the court, from the time each sum was received; and therefore, the computation of interest from the rests will in this case be approved.
But it is objected, that interest should not be charged on the interest computed as a portion of the balances at each of those rests.
From all that has been said upon this subject, I take it, that interest upon interest, or compound interest may be charged in three kinds of cases; first, where with the knowledge and permission of the debtor his whole debt, principal and interest, has been paid by a third person or his surety; because, as to such third person or surety the interest is the same as the principal sum lent, (k) Second, where a trustee or holder of money has been directed, or undertakes to invest the sum placed in his hands in a way to make it productive, and fails or refuses to do so, he shall be charged with compound interest. As where a trustee was ordered to invest a certain sum of money, then in his hands, in bank-stock; and that he should, in like manner, invest the dividends arising from such investment; on his failing and refusing to do so he may be charged with interest upon the sums so directed to be invested, and interest upon that interest until the whole sum shall be invested or brought into court. (l) And third, where a trustee has received rents and profits which he should have applied so as to be productive, or towards the maintenance of devisees; but failing or refusing to do so, retains and uses the money as his own, in a manner to derive profit from it; there also he shall be charged with the whole profits he has made from the use of it; or on his failing clearly to shew what those profits were, it will be presumed, that the annual amount of interest had yielded him interest; and he must be charged with interest thereon accordingly; considering each year’s interest as an addition to the capital sum lent or withheld, (m)
The equity of the last rule is founded upon the fact of the beneficial application of the money to the trustee’s own use in violation of his trust, and to the prejudice of the cestui que trust; and therefore, it must appear, that the nature of the trust required the trustee to make the funds which came to his hands productive as soon, and to as large an amount as practicable in the mode prescribed, or in *206 some other reasonable way, at his discretion; or that he was required to apply them to the maintenance or education of the cestui que trust; and it must also appear, that he not only failed to do so, but applied the money to his own use, or put it to hazard in a manner in which he had, or might have derived a profit from it. That the trustee was required to invest, or make a beneficial application of the money may be shewn by the terms in which the trust was created. But, whether he has applied it to his own use or not, must be shewn by proof. Whether the pecuniary ability of the trustee was such as to enable him to pay at any time, when called on, is a matter of no consequence, as regards the question of interest. The making of a deposite of the money at a bank as his own; or making purchases with it; or using it in the course of his trade, has been deemed sufficient- evidence of his deriving such a profit from it as to authorize the court to charge him with interest upon each annual amount of interest, (n)
In the case under consideration, it very satisfactorily appears to have been the duty of the defendant John Diffenderffer to have applied the rents and profits, received by him, for the benefit of all the devisees of the late Charles Rogers; and that, instead of doing so, he deposited them, as received, in bank as his own, drew them out, made purchases, and used them for his own use and benefit exclusively. What advantages he derived from those rents and profits, thus mingled with his own money, from the time of their being deposited in bank, has not been shewn; but such a management must have been very beneficial to himself, and greatly injurious to the devisees. Such a course of conduct by any one, standing as this defendant John Diffenderffer did, bound to make the funds received by him productive, or constantly useful to those entitled to them, cannot he tolerated by this court. I am therefore, of opinion, that he has been correctly charged with interest on the whole amount including principal and interest found to be in his hands at each rest.
The next inquiry is as to the allowances which should be made to the defendant John Diffenderffer. In England, trustees are never allowed anything as a compensation for their trouble; (o) here it is otherwise; executors, and all persons, standing in the *207 situation of trustees, charged with the care and management of an estate, are allowed a compensation for their trouble, in the form of a commission, of so much per cent, upon the amount collected and disbursed by them. In many cases, the commission is limited by positive law; (p) but in all cases its allowance, within the prescribed limits, seems to be considered as an exercise of a discretionary power which rests so exclusively with the court of original jurisdiction, that it cannot be revised or controlled in any way whatever. (q)
The Court of Chancery is peculiarly and absolutely civil in its institution, and in all its modes of procedure. It is confined to cases of distributive and commutative justice alone, and. has no jurisdiction whatever over torts or crimes. It dispenses no favours, nor does it administer vindictive justice in any form, (r) The principle upon which it awards simple or compound interest to a party whose money has been unjustly withheld, or misapplied, is that of commutative justice, considering the interest as a full compensation for the injustice done, and as the proper, or only remuneration which the court can award in such cases; (s) and, consequently, to lessen or altogether to withhold from a trustee any allowance to which he may be justly entitled, upon the same ground on which he had been charged with simple or compound interest would be, in effect, to impose upon him a fine or forfeiture upon the principles of vindictive justice ; and to punish him for an offence which the court itself had declared would be sufficiently expiated by the payment of simple or compound interest. The duties performed by a trustee, may have béen so light, or may have been performed in so negligent or unskilful a manner as, on that ground, to entitle him to small, or perhaps to no commissions at all; but to whatever commissions he may be entitled, they certainly should not be lessened, or altogether withheld, upon the ground of his having done, or omitted to do anything for which the payment of simple or compound interest had been awarded as a compensation; because every single transaction must be considered by itself. (t) Recollecting, however, that a trustee cannot be allowed to retain or *208 receive anything, as a compensation, until he has paid all he owes to the plaintiffs, or cestui que trust.
It is clear that this trustee, John Diffenderffer, is entitled to some commission, and as his claim to such compensation cannot be affected by a reference to those circumstances, upon which he has been charged with compound interest, it follows, that the amount of his commissions can only be determined by a consideration of all other circumstances connected with the discharge of his duty as trustee. It appears from the proceedings, that he has had, in all respects, as complicated and troublesome an estate to deal with, as ever was committed to the management of a trustee of any denomination. His receipts have been very numerous, many of them small; and the collections and disbursements, it is evident, must have been attended with much trouble ; and, therefore, upon every principle of analogy, apart from considering him as the successor of the trustee Vincent, to whom ten per cent, had been allowed, I am of opinion, that ten per cent, commission is a reasonable compensation, and shall therefore ratify the statement of the auditor, which makes that allowance.
Whereupon, it is Decreed, that the statement D, making a part of the auditor’s report, filed on the 10th of November, 1828, be and the same is hereby ratified and confirmed ; and all other statements at the same time reported by the auditor, together with his report of the 26th of March last, be and the same are hereby rejected; and’all the exceptions of the parties at variance with the statement D, are hereby overruled.
And it is further Decreed, that the defendant John Diffenderffer, pay unto the plaintiffs William S. Winder and Araminta, his wife, or bring into this court to be paid to them, the sum of $13,060 58, with legal interest thereon, from the 8th day of November, 1828, until paid or brought into court.
And it is further Decreed, that the defendant John Diffenderffer, pay unto the defendant Amelia Diffenderffer, or bring into this eourt to be paid to her, the sum of $8,707 05, with legal interest thereon, from the 8th day of November, 1828, until, paid or brought in.
And it is further Decreed, that the defendant John Diffenderffer, pay unto the defendant Michael Diffenderffer, or bring into this court to be paid to him, the sum of $8,707 05, with legal inte- • rest thereon, from the 8th day of November, 1828, until paid or brought in.
*209 And it is further Decreed, that the defendant John Diffenderffer, pay unto the defendant Charles R. Diffenderffer, or bring into this court to be paid to him, the sum of $8,707 05, with legal interest thereon, from the 8th day of November, 1828, until paid or brought in.
And it is further Decreed, that the defendant John Diffenderffer, pay unto the plaintiffs, and to each one of the other parties, their costs in this suit arising under the said decree to account to be taxed by the Register.
See the report of this case as disposed of by the Court of Appeals, 3 G. & J. 311.

 The ex parte proceeding by petition under the act of 1785, ch. 72, s. 4, applies only to cases where a testator has left ‘real or personal estate to be sold for the payment of debts, or other purposes,’ and there is no one appointed to make the sale; or he who has been appointed to do so, neglects or refuses to execute such trust. This, it is proper to recollect, is not a case where the testator had left his estate to be sold for any purpose. And it has been provided, that on the death of a trustee, having no beneficial interest in the lands, the heir at common law shall succeed to the trust estate so held; 1831, ch. 311, s. 11.

 Forum Rom. 127.

 Beam’s Orders, 184; 1 Harr. Prac. Chan. 456,485.

 1 Harr. Prac. Chan. 441.

 3 Blac. Com. 449; 1 Harr. Prac. Chan. 462. In the year 1707, among many other complaints made against the proceedings in chancery, it was alleged, ‘that commissioners to examine witnesses, and their clerks, were not upon oath, which lets them at liberty to discover evidence, and introduces perjury, new commissions, *186 &c.’ Park’s His. Co. Chan. 284. But by an order or rule of court, passed in the year 1721, the commissioners and their clerks were required to take an oath, impartially to examine the witnesses; and not to disclose their depositions until after publication, Beam’s Orders, 327; Eoium Rom. 143. Nor should the witnesses, according to these English principles, disclose their evidence to the parties; Eorum Rom. 141; Cooth v. Jackson, 6 Ves. 32.

 1 Harr. Prac. Chan. 476.

 1 Harr. Prac. Chan. 458.

 Forum Rom. 147; 1 Harr. Prac. Chan. 511.

 Purcell v. McNamara, 8 Ves. 326.

 King v. Daly, 1 Ves. 270. In the matter of Lord Portsmouth, Coop. Rep. 106. The Chancellor’s case, 1 Bland, 681, note ; 4 Laing’s His. Scotland, 254. ‘It is, however, to publicity more than to every thing else put together, that the English system of procedure owes its being the least bad system a3 yet extant, instead of being the worst. It is for want of this essential principle, more than anything else, that the well meant labours of Frederick and Catherine, in the field of justice, have fallen so far short of the mark at which they aimed,’ per Bentham, Park. Hist. Co. Chan. 5. T know that it is one of the best securities for the honest exercise of a judge’s duty, that he is to discharge that duty in public.’ — Per Eldon, Chancellor; Wellesley v. Beaufort, 3 Cond. Chan. Rep. 9.

 Adam’s Rom. Ant. 241, 255; Kennett’s Rom. Ant. 153.

 1 Hallam’s Mid. Ages, ch. 7; 1 Lond. Jurist, 251

 3 Blac. Com. 54; Park’s His. Co. Chan. 20, 49.

 1 Bro. Civ. Law, 478; The William and Mary, 4 Rob. Ad. Rep. 381.

 Cooth v. Jackson, 6 Ves. 12.

 In Maryland, as in England, in all cases where evidence was proposed to be collected, under an ordinary commission for that purpose, the commissioners and clerk’s oath, sent with the commission, required them to swear, that they would not publish, disclose, or make known to any person the contents of any of the depositions until publication should be passed; Kent v. Emory, 22d May, 1769, Chancery Proceedings, lib. W. K. No. 1, fol. 332; Mackall v. Morsell, 5th March 1770; ibid, fol. 224; Cockey v. Hammond, 26th August, 1774, ibid, fol. 332; Howell v. Fell, 21st May, 1783, Chancery Proceedings, No. 2, fol. 17; Usher v. Brown, 28th February, 1786, ibid, 591, And the oath directed to be taken by the register of the High Court of Chancery of Maryland in the year 1670, required him also to swear, that he would not publish or shew, directly or indirectly, the depositions to any person, before publication, without warrant from the court, Chancery Proceedings, lib, O. H. fol. 34. In the year 1824, an eminent London solicitor, in speaking of the course of chancery proceedings in England, in this respect, declared, ‘ that no real remedy for the present evils of the equity jurisdiction .existed, but in the general substitution of public viva voce testimony for the present system of secret written evidence,’ Park’s His. Co. Chan. 453, 561, 566. But, in Maryland, under a commission to audit and settle accounts, neither the commissioners nor their clerks were sworn to secrecy; and therefore, in such cases, the depositions of witnesses brought before such commissioners were always taken publicly in presence of the parties if they chose to attend ; Clapham v. Thompson, 1 Bland, 123, note; Dorsey v. Dulany, 1 Bland, 465, note. Nor, as it would seem, was there any injunction of secrecy in taking testimony under a *189 commission from the Prerogative, now Orphans’ Court. Valleite’s Dep. Com. Guide, 213. And so too as "far back as 1729, in all cases, where the parties were allowed by a special interlocutory order to take testimony before a justice of the peace, the depositions were always taken publicly as at present, Townshend v Duncan, ante, 81. But by the act of 1785, ch. 72, s. 14, which was passed and became a law on the 10th of March, 1786, the secret mode of taking testimony was totally abolished, and the parties are now allowed to attend at a public examination before the commissioners, and to propound to the witnesses such interrogatories as they may think proper.

 Moorhouse v. De Passou, 19 Ves. 433.

 Purcell v. McNamara, 8 Ves. 326; Wood v. Hammerton, 9 Ves. 145; Mill v. Mill, 12 Ves. 408.

 Forum Rom. 129; 1785, ch. 72, s. 14.

 These observations may seem to be at variance with that general rule of law, by which all our courts of justice are governed, in all cases, by which each party has thrown upon him the burthen of supporting his own case, and of meeting that of his adversary without knowing, before hand, by what evidence the case of his adversary was tobe established, or his own opposed. Wigramon Discovery, 93; Willan v. Willan, 19 Ves. 591; The King v. Holland, 4 T. R. 691. That rule however, operates only so far as to protect a party from being compelled to set forth the proofs and circumstances he means to offer in support of his own case at the trial* But in courts of common law nothing is more frequent, than, after a witness has been examined, to call another to discredit or contradict what the previous witness had testified. The only difference between that mode of proceeding, and this, under a commission, is, that, under a commission, time may be allowed to send for and take the opposing testimony; but, that, in a court of common law, such testimony must be introduced during the trial and without delay. It might seem, that the removal of the mischief of surprise, by a public examination, would be more than counterba *190 lanced by the danger of perjury; but no instance has occurred, within my recollection, in which it has been intimated, that the proofs had been falsified, or even discoloured liy any party who had been thus, by a public examination, fully informed of the testimony of his antagonist,

 Cooth v. Jackson, 6 Ves. 30.

 Whitelocke v. Baker, 13 Ves. 515.

 Beam’s Orders, 25, 71, 184, 272, 311, 492,

 Whitelocke v. Baker, 13 Ves. 515.

 Lingan v. Henderson, 1 Bland, 241.

 1 Harr. Prac. Chan. 478.

 Lee v. Atkinson, 2 Cox. 413 ; Murray v. Shadwell, 2 Ves. and Bea. 405.

 Cockey v. Hammond. — 25 ih of January, 1775. — The plaintiff’s second interrogatory to be asked of Lancelot Todd, is; ‘Are you to gain or lose any thing in case the decree in chancery is for, or against the complainant John Cockey !’ And then just previous to the heading of the commissioners’ return is the following entry, ‘Mr. Hammond the defendant, objects to the testimony of Lancelot Todd, as being interested in the eyent of the canse; and, therefore, desires he may not be examined on his interrogatories.’ After which, follows Todd’s deposition, in which he answers thus, ‘secondly, that he was not to gain or lose anything by a decree in chancery in favour of the complainant.’ Nothing further appears in the case, as to this objection. — Chancery Proceedings, lib. W. K. No. 1, fol. 829.

 Strike’s Case, 1 Bland 96; Harwood v. Harwood, 1806, per Kilty, Chancellor, M. S.; Johnson v. Berry, 1810, per Kilty, Chancellor, M. S.

 Callaghan v. Rochfort, 3 Atk. 643; Vaughan v. Worrall, 2 Swan, 400.

 Fenton v. Hughes, 7 Ves. 290 ; Purcell v. McNamara, 8 Ves. 326 ; Wood v. Hammerton, 9 Ves. 145; Queen v. The State, 5 H. and J. 232; 1 Bro. Civ. Law, 478; said to he otherwise in criminal cases; State v. Norris, 1 Hayw. Rep. 438.

 Moorhouse v. De Passau, 19 Ves. 433; S. C. Coop. 300; Harrison v. Courtauld, 4 Cond. Chan. Rep. 499.

 Clarke v. Turton, 11 Ves. 240.

 4 Inst. 278; Whitelocke v. Baker, 13 Ves. 515.

 Sandford v. Remington, 2 Ves. jun. 189; Cooth v. Jackson, 6 Ves. 41; Eastham v. Liddell, 12 Ves. 201; Mill v. Mill, 12 Ves. 408; 1 Harr. Pra. Chan. 455.

 Bolton v. Corporation Liverpool, 6 Cond. Chan. Rep. 515; Greenough v. Gaskell, 6 Cond. Chan. Rep. 518; Falmouth v. Moss, 5 Exch. Rep. 158.

 Smithson v. Hardcastle, 1 Dick. 96; Wardel v. Dent, 1 Dick. 834; Vaillant v. Dodemead, 2 Atk. 524; Nightingale v. Dodd, Amb. 583; Parkhurst v. Lowten, 2 Swan. 194; Davis v. Reid, 7 Cond. Chan. Rep. 488; McKenzie v. Towson, 1806, per Kilty, Chancellor, M. S.; Singleton v. Edmondson, 1806, per Kilty, Chancellor, M. S.

 Ashton v. Ashton, 1 Vern. 165. — Earl of Salisbury v. Cecil, 1 Cox. 277; Brace v. Ormond, 1 Meriv. 409; Freeman v. Fairlie, 3 Meriv. 43; Bolton v. Corporation of Liverpool, 6 Cond. Chan. Rep. 513.

 1798, ch. 84.

 Hall v. Wirt, 1806, per Kilty, Chancellor, M. S.

 Amey v. Long, 9 East. 484; Earl of Salisbury v. Cecil, 1 Cox, 277; The Princess of Wales v. The Earl of Liverpool, 1 Swan, 114; Walburn v. Ingilhy, 6 Cond. Chan. Rep. 508; Bolton v. Corporation, of Liverpool, 6 Cond. Chan, Rep. 513; 3 Blac. Com. 382; 1 Harr. Prac. Chan. 450, 474; Ringgold v. Jones, 1 Bland, 90, note.

 1826, ch. 222; 1829, ch. 159; Park. His. Co. Chan. 361.

 Onion v. McComas, ante 83; Purvince v. Ogden, Chancery Proceedings, 1804, fol. 49.

 Townshend v. Duncan, ante 81.

 Wardel v. Dent. 1 Dick, 334; Hennegal v. Evance, 12 Ves. 201, Bradshaw v. Bradshaw, 5 Cond. Chan. Rep. 122; Bryson v. Petty, 1 Bland, 182, note ; Forum Rom. 118 ; 1 Harr. Prac. Chan. 447.

 1824, ch. 133.

 Stokes v. Lewis, 1 T. R. 20.

 Chitty on Bills, 164.

 Randal v. Cockran, 1 Ves. 98; Ex parte, Rushforth, 10 Ves. 414; Pothier Obli. p. 2, c. 6, art. 4; Just. Inst. by Cooper, 612.

 1763, ch. 23, s. 8.

.) Meluy v. Cooper. — This bill was filed on the 7th of December, 1803; it states that a mill, &c. the property of James Tilghman, had been sold under a decree of this court, by Hugh Sherwood, as trustee; that James Cooper became the purchaser, who agreed to receive the plaintiff, Meluy, as a joint purchaser with him of the one half; each to pay one half of the purchase money; that Cooper took possession and died, without having paid any part of the purchase money; that the whole purchase money had been since paid by the plaintiff, but no deed had been obtained from the trustee, Sherwood; and that the plaintiff has a lien on Cooper’s half for the purchase money, which he, the plaintiff, became bound as surely to pay, *200 and had in fact paid. Prayer, that the mill, &c. might be sold tp reimburse the plaintiff, &c.
On the 12th of February, 1804, the infant heirs of James Cooper answered by their guardian ad litem: and the trustee, Sherwood, also put in his answer, by which they admitted the truth of the allegations of the bill. Upon which the case was submitted ; and on the 13th of February, 1804, a decree was passed that the property be sold, &c. After which the infant defendants, by William Atkinson, their guardian, petitioned that the decree might be opened, and that they might have leave to amend their answer.
1st March, 1804. — Hanson, Chancellor. — Not even an affidavit of the truth of the matters stated in, or annexed to the petition. The Chancellor, therefore, cannot at present comply with the prayer of the petition.
On the 2d of April, 1804, a similar petition, with an affidavit of the truth annexed, was filed; and the plaintiff, Meluy, afterwards filed a counter petition, upon which the case was again submitted.
1st May, 1804. — Hanson, Chancellor. — The Chancellor has considered the said petitions. The former, although intended to prevent the execution of a decree, is neither an application for rehearing a cause, nor a bill of review. It is a request that a decree may be opened, and that another answer may be admitted, and fresh proceedings be had. In fact it was an application to set aside a decree, regularly passed on the bill, answers, and proof, without suggesting any error in judgment, or discovery of facts; and that, too, is expected to be done without hearing the other party or calling on him to answer. A similar application the Chancellor does not recollect ever before to have received or heard of. If it should succeed, the precedent thereby established, might render decrees of little value indeed; as a defendant, against whom a decree should he passed, might obtain an order for annulling the proceedings; or, at least, infant defendants might have that advantage.
When a decree is passed, the parties are no longer in court. Suppose the Chancellor to pass an order for opening the decree, as is prayed, what are to be the subsequent proceedings ? It may be said, the Chancellor is to act according to his discretion, to prescribe the time for putting in an answer by another guardian, &c. &c. But under what law, usage, or practice, should he act! On a bill of review, permitted to be filed, or an order for rehearing, the practice is established. But the present application, as has already been observed, is neither a bill of review nor a petition for rehearing. In a word, it appears wholly unprecedented, as well as improper.
Mr. Meluy, however, hearing of the application, has filed a petition against it. Perhaps this petition may be considered as a voluntary answer to the petition of Mr. and Miss Cooper by Mr. Atkinson, calling himself their guardian. Mr. Meluy has, in his petition, made a proposition which appears reasonable, viz. to have an account stated by the auditor.
And it is, therefore, adjudged and ordered, that the auditor of this court, on the 15th day of June next, proceed to state an account between the deceased, father of the petitioners, Thomas and Ann Cooper; provided the said Atkinson shall come before the auditor for that purpose; and that the said trustee, appointed to sell the said property, shall not proceed to a sale until further order.
The Chancellor thinks proper to declare, that he passes this order merely because the said Meluy has, by his petition, offered to have the sale postponed, and to have an *201 account stated. If the parties shall choose to come before the auditor, before the said day, to have the said account stated, the auditor may proceed accordingly; or if the said parties, by writing tobe here filed, shall agree to the appointment of any person or persons more convenient to them than the auditor, an account by the said person or persons stated, will be received by the Chancellor as an account stated by the auditor; provided the said person or persons proceed on or before the 15th of June next.
On the 16th of June, 1804, the parties not having appeared before the auditor, the foregoing order was annulled, and the trustee ordered to sell, &c.

.) Mickle v. Taylor, 1806, per Kilty, Chancellor, M. S. Theob. Prin. and Sur. 259.

.) Robinson v. Tonge, 3 P. Will. 400. Theob. Prin, and Sur. 233. Ex parte, Street, 1 Bland, 532, note.

 1 Mad. Chan. 250.

 X Mad. Chan. 6X5.

 2 Fonb. 423

 Hammond v. Hammond, post.; Sheppard v. Starke, 3 Mun. 41.

 Davis v. Walsh, 2 H. & J. 344

 2 Fonb. 438.

 Sammes v. Rickman, 2 Ves. jun. 37; Ringgold v. Ringgold, 1 H. & G. 12; Latimer v. Hanson, 1 Bland, 51.

 Co. Litt. 172, a.

 Newton v. Bennet, 1 Bro. C. C. 359; Rocke v. Hart, 11 Ves. 59 ; Raphael v. Boehm, 11 Ves. 92, S. C. 13, Ves. 408 & 591; Tebbs v. Carpenter, 1 Mad. Rep, 290; Attorney-General v. Solly, 2 Cond. Chan. Rep. 528; Ringgold v. Ringgold, 1 H. & G. 12.

 Sykes v. Hastings, 11 Ves. 363.

 1798, ch. 101, sub ch. 10, s. 2.

 Nicholls v. Hodges, 1 Peters, 562.

 1 Fonb. 2; Peake v. Highfield, 1 Russ. 560; Nash v. Nash, 4 Ecclesi. Rep, 357; Singery v. Attorney-General, 2 H. & J. 497; Fornshill v. Murray, 1 Bland, 484.

 1 Fonb. 3; 2 Fonb. 423.

 Sammes v. Rickman, 2 Ves. jun. 37; Adye v. Feuilleteau, 3 Swan. 87, note.